Argued and submitted January 27, affirmed August 26, 1992

In the Matter of Violation of
the Forest Practices Act,
OAR 629-24-544(1), 629-24-546(2)(a),
629-24-546(2)(c), 629-24-546(3)(a),
and 629-24-546(4) by Frank Thompson.

Frank THOMPSON,
*Petitioner,*

*v.*

DEPARTMENT OF FORESTRY
OF THE STATE OF OREGON,
*Respondent.*

(89-FG021 through 89-FG025; CA A68468)

836 P2d 753

Steven E. Benson, Portland, argued the cause and submitted the brief for petitioner.

John T. Bagg, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Before Richardson, Presiding Judge, and Deits and Durham, Judges.

DURHAM, J.

## DURHAM, J.

Petitioner seeks review of an order of the Board of Forestry that concluded that he violated the Forest Practices Act (Act), ORS 527.610 *et seq*, and imposed a $1720 fine. We affirm.

The Board found that, in May, 1988, petitioner notified the Department of Forestry that he intended to log trees on land in rural Columbia County. The Department notified him that unnamed creeks that it deemed Class I waters[1] flowed across the parcel into Green Creek, a Class I water bordering the parcel. Petitioner hired his three sons and a nephew, who began logging in the summer of 1988. Sometime between then and March, 1989, they (1) operated a tractor skidder in and dragged logs up the bed of a seasonal creek that flows into Green Creek; (2) failed to "water bar"[2] skidder ruts before the rainy season, allowing water to erode soil; (3) operated a skidder in and dragged logs across the bed of a Class I stream; and (4) clear-cut all trees along 265 feet of the riparian area of a Class I stream and felled logs into it. The Board concluded that petitioner had violated five rules that regulate forest practices under the Act.

---

[1] OAR 629-24-101 provides, in part:

"(8)(a) 'Class I waters' means any portions of streams, lakes, or other waters of the state which are significant for:

"(A) Domestic use, including drinking, culinary and other household human use;

"(B) Angling;

"(C) Water dependent recreation; or

"(D) Spawning, rearing or migration of anadromous or game fish.

"* * * * *

"(10)(a) 'Class II waters' means any waters of the state, not classified as Class I waters, which have a definite channel or bed * * *."

[2] OAR 629-24-544 provides, in part:

"For each landing, skid trail, or fire trail, provide and maintain a drainage system that will control the dispersal of runoff water from such exposed soils, and that will minimize the entry of muddy and turbid water into the waters of the state:

"(1) Provide and maintain cross-drains, dips, water bars, and other water diversions to prevent soil from entering waters of the state.

"(2) Divert or water bar all tractor or skidder trails before the rainy season."

■ Petitioner assigns as error the Board's finding that he had notice that a Class I water was present on the parcel. He does not argue that he could not discern which, if any, creeks were Class I waters. He asserts that he had no notice that a specific tributary to Green Creek was a Class I water.

The State Forester must notify an operator if any logging operation will occur within 100 feet of a Class I water. OAR 629-24-113(2). The operator must then obtain forester approval or waiver of a written plan to operate in the set-back area. OAR 629-24-113(1)(a). Here, the State Forester returned to petitioner a notice of operations form that notified him that he had "determined that the following resources occur within or adjacent to your operations area. Your operation may require prior approval before you begin." Although none of the resources, including Class I waters, listed on the printed form was marked, the Department typed "TRIB. TO GREEN CREEK" on the form without specifying the class. Moreover, petitioner also received an inspection form, compiled by the Department, that stated that he should not "operate within 100 feet of Green Creek tributary." The Board found that petitioner was an experienced logger who is familiar with forest practice rules. Substantial evidence supports the finding that he had notice that the tributary was a Class I water.

■ Petitioner also assigns error to the Board's conclusion that he was liable for the acts of his son, Ronald. He acknowledges that he gave Ronald permission to salvage firewood from the parcel after it was logged and that Ronald operated a skidder in and felled trees into a Class I stream. Petitioner argues, however, that Ronald was not his agent. He also argues that the Act does not apply to the salvage of firewood.

Petitioner was the "operator" of forest practices on the parcel. ORS 527.620(6), (10); *see State v. Alder Creek Lumber Co., Inc.*, 33 Or App 195, 197, 575 P2d 1020 (1978). Although in some circumstances an operator need not notify the State Forester before salvaging firewood, OAR 629-24-107(2)(d), the exemption does not relieve an operator from complying with other forest practices rules. OAR 629-24-107(3). Petitioner gave Ronald permission to enter the parcel

and to salvage firewood. The Board did not err when it concluded that he was responsible for Ronald's acts.

■    Petitioner also assigns error to the Board's conclusion that he failed to maintain 75 percent of the shade that had existed over a Class I stream before the logging. OAR 629-24-546(3).[3] He acknowledges that he logged 265 feet of the riparian area on the east side of the creek. He asserts that more than 75 percent of the shade remained, in part because the Board failed to account for shade from an adjacent hill.

An operator must protect shade and other amenities provided by trees and other forest vegetation by preserving an "average of 75% of the preoperation shade over the aquatic area along Class I waters." OAR 629-24-546(3)(a). The "riparian management area" is the geographic area "along *each side* of a Class I water in which special management practices are required" to protect water quality, fisheries and wildlife habitat. OAR 629-24-101(41). (Emphasis supplied.) The Board did not err when it concluded that petitioner failed to preserve 75 percent of the pre-operation shade over the creek where he clear-cut more than 25 percent of the trees and vegetation on one side of it.

■    Finally, petitioner assigns error to the Board's assessment of a fine for damage to fisheries. He asserts that the Class I stream was "dry or near dry" in the summer and, therefore, there was no evidence that a fishery existed. However, an exhibit prepared by a state fish biologist showed that logging caused soil deposition into the stream that "suffocated" cutthroat trout eggs that year and would cause their death the next year in downstream portions of the creek to its confluence with the Columbia River. There was substantial evidence to support the Board's finding that the creek supported a fishery and that it was damaged by the logging operation. The Board did not err when it considered that damage.

Affirmed.

_____

[3] OAR 629-24-546(3) provides; in part:

"The operator shall provide for shade, wildlife habitat, soil stabilization, and water filtering effects of forest vegetation in riparian management areas adjacent to Class I waters by applying the following practices:

"(a)  Maintain an average of 75% of the preoperation shade over the aquatic area along Class I waters."